IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JOEY L. JUSHAWAY                                                          PLAINTIFF

V.                                                      CIVIL ACTION NO.4:08CV4-WAP-JAD

CHRISTOPHER EPPS, et al.                                                 DEFENDANTS

REPORT AND RECOMMENDATION

This matter came before the undersigned for an evidentiary hearing March 23, 2009. Jushaway testified and the parties submitted various exhibits. The undersigned heard argument from counsel. The court has considered the proof presented at the hearing and makes the following report and recommendation.

FACTUAL FINDINGS AND ANALYSIS

Many of the pertinent facts in this case have already been set forth in the earlier report and recommendation concerning the defendants' motion for summary judgment. Jushaway is a minimum security inmate presently housed at the Marshall County Correctional Facility. He met Jerlean Green Gamble while in Unit 17 at Parchman while she was employed as a corrections officer. She was subsequently terminated by the Mississippi Department of Corrections (MDOC). Jushaway applied for and was granted permission to marry Jerlean Green. The couple married in December, 2003, at the Issaquena County Correctional Facility. After Jushaway married Gamble, the couple were allowed to visit for a period of three years at the Issaquena facility without incident.

When Jushaway was transferred back to Parchman, he applied for and was granted a family visitation. During this visit, according to the defendants, it was realized for the first time that Mrs. Jushaway was Jearlean Gamble. The visitation was terminated and Gamble Jushaway given a letter

advising her that she was banned from coming into Parchman without first receiving permission.

The defendants admit that the marriage application was approved by MDOC without performing a

background investigation. Jushaway contends and testified that the marriage was done with

knowledge that she was a former employee. He claims there was once a letter in his file to

corroborate this claim, but no such letter is presently in the file

Jushaway's complaint asserted that his housing assignment was changed and his visitation

with his wife terminated in retaliation for his grievances filed against Sylvia Kelly, an MDOC

employee and wife of Parchman Superintendent Lawrence Kelly. The undersigned earlier

recommended that the defendants' motion for summary judgment be denied on two basis. First,

Jushaway's complaint, liberally construed stated a claim for retaliation against Jushaway for the

exercise of his constitutional rights to seek redress for grievances against the government. *Woods*

*v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Therefore, the fact that he does not have a right under

either the MDOC regulations or the federal constitution to any visitation, any particular housing or

classification was not necessarily fatal to his claim. If Jushaway could prove that Sylvia Kelly

retaliated against him causing his reclassification, transfer to less favorable housing and the

termination of visiting privileges, he would have a potentially valid claim and be entitled to a

remedy regardless of the fact that these conditions of his incarceration are not constitutionally

protected. Secondly, the undersigned was concerned about the apparent retroactive application of

a new MDOC regulation imposing a permanent ban on former MDOC employees visiting with

inmates they met during the course of their employment. Given the fact that the Jushaway's

marriage pre-existed this regulation, the undersigned opined that the defendants should at least put

forward a legitimate penological basis for the institution of this regulation after the commencement

2

of the litigation. These are the issues to be addressed after the evidentiary hearing and are addressed below separately.

## RETALIATION CLAIM

Jushaway alleged in his complaint that his visitation with his wife was terminated and he was reassigned from Issaquena to Parchman and then to Marshall County all as acts of retaliation by Sylvia Kelly, an MDOC employee acting in concert with the other defendants. Jushaway has no constitutional right to visitation with his wife or anyone else. *Jones v. Diamond,* 636 F.2d 1364, 1376-77 (5th Cir. 1981) *(quoting McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.) *cert. denied*, 423 U.S. 859 (1975)) (*overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 *(*5th Cir. 1986). Likewise, he has no constitutionally protected interest in any classification nor any particular housing. *Meachum v. Fano*, 427 U.S. 215 (1976). Under the regulations of the Mississippi Department of Corrections all visitation is left to the discretion of facility heads. Jushaway, therefore, cannot make out a valid claim for denial of visitation per se. He can only make out a valid claim if visitation was deprived in retaliation for exercising a constitutional rights.

In order to prevail on his claim for retaliation, Jushaway must establish a specific constitutional right; the defendants' intent to retaliate against the him for his or her exercise of that right; a retaliatory act and causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Jushaway's testimony varied slightly but significantly from the allegations of his complaint. Jushaway testified that he was advised by personnel at Issaquena County Correctional Facility not to tell Kelly anything. He testified that pursuant to those instructions he was not cooperative with Kelly's requests for information. In his own words the genesis of his conflict with Kelly was his

3

'smart mouth.' He attributes the alleged retaliation by Kelly with the assistance of others, not to his formal complaints against Kelly, but to a personal conflict generated by his lack of cooperativeness and his 'smart' mouth. This difference is fatal to his complaint. Jushaway's proof if accepted proves at most a personal vendetta unrelated to any constitutional rights that Jushaway may have exercised. Jushaway's testimony was that Kelly did not act with any intent to retaliate against him based upon his exercise of his constitutional rights. His testimony undercuts any claim that the exercise of his constitutional rights was a cause of any adverse action against him.[1] Jushaway has failed to carry the burden of proof to establish each element of his claim.

### LEGITIMACY OF NEW PERMANENT BAN

The undersigned recommended that the motion for summary judgment filed by the Mississippi Department of Corrections be denied in part because the defendants failed to produce any evidence of a legitimate penological interest to be served by the new regulation which bans all former employees permanently from visiting with any inmate whom they met while employed by the Mississippi Department of Corrections. The undersigned's concern was the apparent retroactive application of this new visitation ban to an existing marriage. Based upon the evidence produced at trial it is not necessary to determine the general validity of these new regulations, nor to determine if they can be applied retroactively to ban visitation in a pre-existing marriage.

First, it is noted that the current regulations were introduced at trial by the defendants but neither party introduced earlier versions of the regulations. Therefore, Jushaway has technically failed to meet his burden of proof on this issue. The various versions of the visitation regulations

---

[1] The undersigned makes no finding regarding whether Kelly in fact had anything to do with the adverse actions Jushaway suffered, nor does the undersigned make any finding that Kelly was motivated by any desire to retaliate against Jushaway for any reason.

are none the less part of the court's record. See Docket 56-2. These earlier versions of the regulations were relied upon by the undersigned in the report and recommendation and by the court in denying the motion for summary judgment. Neither side objected to this use of the earlier versions of the regulations. The undersigned will therefore take notice of the various incarnations of the visitation regulations as pertinent.

Whatever the general validity of the new regulation, the evidence presented at the trial established that Gamble-Jushaway was in fact determined to be a security risk and was banned as a result of her actions. All versions of the regulations provided for individuals to be banned if they were determined to present a security risk.[2] Deference is due to the prison authorities to make that determination and the mere fact that she had visited with the plaintiff without incident for a period of time does not invalidate MDOC's decision to ban her. Her ban pre-existed and does not depend on the new regulation but was done as a result of the investigation of her activities as an employee.

The record at the evidentiary hearing reveals that an investigation was conducted and ultimately that Gamble-Jushaway was terminated by MDOC. There is now proof that she was in fact banned from returning to the facilities at the time of her termination. The record includes a memorandum to the head of security advising him that Gamble Jushaway was banned. Exhibit 2.

_____

[2] "Any individual who, though investigation, is believed to pose a threat to the offender or institution will be excluded from visitation." Docket 56-2 p. 11 lines 19-20. MDOC visitation regulations effective 12-15-2002. "Banned Visitors • Any individual who, through investigation, is believed to pose a threat to the offender or facility will be excluded from visitation." Docket 56-2, p.26, line 84, 98- 99 and Exhibit 3, p. 3, lines 110-111 from the MDOC policy as effective 3-1-2004 and 6-4-2008.

The defendants claim that MDOC did not grant permission to Jushaway to marry Jerlean knowing her true identity. An evaluation of the evidentiary evidence corroborates this claim and the undersigned accepts it as true. To the contrary it appears that Jerlean knowingly violated the termination ban on her. Jerlean was terminated on May 23, 2003 for among other things fraternizing with inmates including Jushaway. Jushaway's exhibit 1 indicates that on June 12, 2003 he requested a marriage packet. He received that marriage packet on June 19, 2003. By November 2003 the marriage packet was returned to the social worker. There is no dispute that the packet listed Jerlean not by the Gamble under which she was employed, but as Jerlean Green.

Aside from the ban imposed on her termination, existing regulations required Gamble to obtain the consent of the superintendent or his designee to visit any offender. (Doc. 56-2, Line 12-13.) There is no indication that any such consent was given. Jushaway's transfer to Issaquena County and the name change used by Jerlean apparently facilitated the visitation and the permission to marry. The undersigned can come to only one conclusion on this record. Jerlean Gamble Jushaway pulled a fast one over on the Mississippi Department of Corrections in continuing to visit and marrying Jushaway and that Jushaway may have been a party to the deception. Another inmate may have grounds to challenge the reasonableness of a life time ban on former MDOC employees being allowed to visit inmates met during their employment. An inmate who by either his own trickery and/or that of his wife obtained MDOC's consent to wed a banned former employee may not successfully challenge those regulations. In any event those regulations are factually not the basis upon which the ban was imposed in 2003 nor in 2006. It is the banning of Gamble Jushaway as a security risk in those years and not the 2008 post-suit regulation that gave rise to this suit. Though the defendants have mistakenly relied upon the 2008 regulation, it appears that it could only

become relevant if MDOC were to revoke the general ban on Gamble Jushaway from being on MDOC and MDOC affiliated facilities. Finding that Gamble Jushaway has been banned by MDOC officials pursuant to regulations existing at all pertinent times, the court should make no determination regarding the new regulation.

The undersigned also notes that the record does establish that these two individuals have now been married for five and a half years. They did in fact visit for three years without any reported incident. Jushaway is eligible for parole but given the seriousness of his offenses may never be paroled. Jushaway has by all accounts has been a good prisoner for a very long time as reflected in his classification as a minimum security risk inmate. The results of a continuation of the ban on any visitation by his wife is unquestionably harsh. It has now been almost six years since Mrs. Jushaway's employment with MDOC ended. It was acknowledged by counsel for the defendants that an exception can be made to allow visitation between this inmate and his wife. The undersigned would encourage the Mississippi Department of Corrections to periodically reconsider whether Gamble Jushaway continues to represent a security risk. But the decision on whether to allow such visitation, applying the law to the facts of this case, is a matter committed to the discretion of the appropriate officials with the Mississippi Department of Corrections. This court may not compel allowance of such visitation.

Finding that Jushaway has not established entitlement to relief in this court, the undersigned recommends that the complaint be dismissed with prejudice and judgment entered for the defendants.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.1(C) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations.

Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Plaintiff is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 14th day of April, 2009.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE